Filed 8/4/26  Coleman v. Dyson CA3

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

---

| | |
|---|---|
| COREY COLEMAN,<br>    Plaintiff and Appellant,<br><br>v.<br><br>DYSON INC.,<br>    Defendant and Respondent. | C104236<br><br>(Super. Ct. No.<br>STKCVUWT20230011226) |

Plaintiff Corey Coleman appeals from a judgment entered after a trial court granted the motion for summary judgment filed by his former employer, defendant Dyson Inc. (Dyson).  On appeal, Coleman argues the trial court erred in granting the motion by concluding he had not engaged in activity protected by Labor Code sections 98.6 or 1102.5.[1]  We affirm the judgment.

## I.    BACKGROUND

In 2023, Coleman filed a complaint against Dyson alleging four causes of action: (1) retaliation under section 98.6, (2) retaliation under section 1102.5, (3) wrongful termination in violation of public policy, and (4) civil penalties under the Labor Code

---

[1]  Undesignated statutory references are to the Labor Code.

Private Attorneys General Act of 2004 (§ 2698 et seq.) for the alleged Labor Code violations.

Dyson moved for summary judgment or, alternatively, summary adjudication as to each cause of action. With respect to the first and second causes of action under sections 98.6 and 1102.5, respectively, Dyson argued, in relevant part, that Coleman did not engage in protected activity.[2] The following facts, except where noted, are undisputed:

Before he was fired, Coleman was a director of field sales for Dyson. He was an at-will employee. Coleman was responsible for administering and overseeing an employee incentive plan. This included tracking the time "Beauty Brand Experience Representatives" and "Field Sales Representatives" spent in their home store versus their non-home store for purposes of the incentive plan. Each of these employees was assigned to a particular store, and the incentive plan offered them the possibility of additional compensation based on that home store's performance. Coleman approved bonus exceptions for four employees for time spent working outside of their home stores. The parties agree Coleman's termination arose out of his approval of these exception requests. In support of its motion, Dyson submitted evidence that Coleman did not verify where these employees spent their time. Coleman disputed this and argued there was verifiable support. He did not dispute that these employees had already received these bonuses, and that he never had concerns Dyson would claw the payments back.

The trial court concluded there was no protected activity under section 98.6 or 1102.5 as a matter of law and granted Dyson's motion for summary judgment. The trial court entered judgment in favor of Dyson, and Coleman filed a timely appeal therefrom.

---

[2] Coleman's assertion that Dyson did not specifically argue for summary adjudication in its moving papers as to section 98.6 is factually incorrect.

## II.  DISCUSSION

*A.      Standard of Review*

We begin by summarizing several principles that govern the grant and review of summary judgment motions under Code of Civil Procedure section 437c.

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843 (*Aguilar*).)  "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476; see also Code Civ. Proc., § 437c, subd. (c).)

A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto." (*Aguilar, supra*, 25 Cal.4th at p. 850; see also Code Civ. Proc., § 437c, subd. (p)(2).)  "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar, supra*, at p. 850.)  Once the moving party meets its initial burden, the burden shifts to the opposing party to demonstrate the existence of a triable issue of material fact. (*Ibid*.)  "The plaintiff or cross-complainant shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)  We review the evidence and the reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. (*Aguilar, supra*, at p. 843.)  Nonetheless, "[t]here is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

"Although we independently assess the grant of summary judgment, our inquiry is subject to two constraints. Under the summary judgment statute, we examine the evidence submitted in connection with the summary judgment motion, with the exception of evidence to which objections have been appropriately sustained. … [¶] Furthermore, our review is governed by a fundamental principle of appellate procedure, namely, that ' "[a] judgment or order of the lower court is presumed correct," ' and thus, ' "error must be affirmatively shown." ' [Citations.] Under this principle, [appellant] bear[s] the burden of establishing error on appeal, even though [respondent] had the burden of proving its right to summary judgment before the trial court. [Citation.] For this reason, our review is limited to contentions adequately raised in the [appellant's] briefs." (*Paslay v. State Farm General Ins. Co*. (2016) 248 Cal.App.4th 639, 644-645.)

B. *Section 98.6*

Coleman argues the trial court erred by concluding he did not engage in activity protected by section 98.6. We disagree.

Section 98.6 prohibits discharging an employee "because the employee … engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee … has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to their rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint that they are owed unpaid wages, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in a proceeding pursuant to that section, *or because of the exercise by the employee … on behalf of themselves or others of any rights afforded them*." (§ 98.6, subd. (a), italics added.)

The trial court concluded Coleman did not present evidence to establish a triable issue of fact as to whether he exercised any rights, on behalf of himself or others, that were protected by the Labor Code. As the trial court explained, "While [section] 98.6[,

4

subdivision ](a) appears to broadly proscribe terminations for the exercise of 'any rights,' the California Court of Appeal in *Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72[ (*Grinzi*)], analyzed the statute, and concluded that this prohibition can be applied only to conduct protected by the Labor Code." (Italics added.) (See *Grinzi, supra*, at pp. 77, 86-88.)

Coleman does not dispute the interpretation of section 98.6 set forth in *Grinzi, supra*, 120 Cal.App.4th 72. Rather, he cites this authority and argues he "engaged in protected activity under … section 98.6 when he exercised rights on behalf of his salesperson employees to receive earned bonuses as the right to be paid earned bonus monies is a right protected by the Labor Code." To support this argument, he quotes from section 204, subdivision (a), which provides that all wages are due and payable twice during each calendar month. Further, he reiterates a statement from our Supreme Court that "[i]ncentive compensation, such as bonuses and profit-sharing plans, also constitute wages." (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.) These statements do not equate to suggest Coleman exercised a right protected by the Labor Code. We agree with Dyson that Coleman has failed to demonstrate that a manager's approval of a bonus exception constitutes protected activity under section 98.6. As such, the trial court did not err in concluding there was no protected activity as a matter of law under this statute.

C.    *Section 1102.5*

Coleman argues the trial court erred by concluding he did not engage in activity protected by section 1102.5. Again, we disagree.

Section 1102.5 provides, in relevant part: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information … a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, … if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or

5

regulation, regardless of whether disclosing the information is part of the employee's job duties."  (§ 1102.5, subd. (b).)

"[T]he protections of section 1102.5[, subdivision ](b) apply only where the disclosing employee 'has reasonable cause to believe that the information discloses a [legal] violation.'  [Citation.]  This clause imposes a requirement of objective reasonableness and excludes from whistleblower protection disclosures that involve only disagreements over discretionary decisions, policy choices, interpersonal dynamics, or other nonactionable issues."  (*People ex rel. Garcia-Brower v. Kolla's, Inc*. (2023) 14 Cal.5th 719, 734.)  "The statute … does not protect employees who do not believe or who unreasonably believe that the information they are disclosing shows a violation of the law."  (*Id*. at p. 731.)

Coleman argues he engaged in protected activity under section 1102.5 "when he disclosed his belief the salespersons had rightfully earned bonus monies; disclosed he had exercised their right to be paid their earned bonuses; and disclosed [Dyson]'s actions to suspend or terminate him were unjust, highly concerning, and violated Labor Code section 98.6 as set forth above."  We already rejected the arguments he previously set forth under section 98.6.  The trial court concluded there was no protected activity under section 1102.5 as a matter of law.  It explained Coleman "has produced no evidence showing that he considered himself to be advocating for payment of the wages at the time of his conversation with [Dyson's human resources business partner] or his emails to Legal and Human Resources.  On the contrary, [Coleman] consistently rejected that interpretation in his deposition testimony."  Coleman quotes this deposition testimony as the factual support for his assertion he engaged in protected activity under section 1102.5, but it is as the trial court described:

"Q.  Okay.  So you don't recall anything specific you said to advocate for the payment of bonuses to employees?

6

"A.  Well, I do recall saying I approved and authorized them.  So I supported the decision.

"Q.  Okay.  But otherwise -- I mean, these bonuses were already paid; correct?

"A.  They were already paid.

"Q.  Okay.

"A.  That is correct.

"Q.  And the meeting was not about taking the bonuses back, was it?

"A.  It was not."

"Q.  Okay.  And what was the purpose in sending this communication to [the Head of Legal and the Head of Human Resources]?

"A.  To save my employment.  I wanted to make sure they were aware of the situation."

"Q.  Okay.  In this email did you tell [them], 'Hey, I think I'm being singled out because I was advocating for the payment of bonuses to an employee'?

"A.  I don't -- I -- no, I wouldn't use that phrase. I -- I was using -- I was -- again, attempting to make both [of them] aware of what I felt was an unjust situation."

"Q.  Okay.  Okay.  And why did you think that was important to tell [them], as it related to the investigation of your approval of these exceptions?

"A.  I believe that [Dyson's human resources business partner] and [head of sell out] were acting in a way that was not consistent with what would be an acceptable investigate [*sic*] or decision, and I wanted to make sure both [the head of legal and the head of human resources] knew there were questions about integrity."

"Q.  Okay.  But you understood that, as a manager, you should be doing some diligence when you received a request for an exception to the monthly compensation program, correct?

"[¶] · · · [¶]

7

"[A.]  I understood that it was my responsibility to ensure that our employees are paid correctly, and I did that through conversation with their direct supervisor."

Moreover, the trial court concluded that even if it could accept Coleman's characterization of the reason for his termination as being because he advocated for payment of earned wages, the undisputed evidence showed Coleman had no reasonable cause to believe the information he shared with superiors disclosed "a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."  (§ 1102.5, subd. (b).)  In particular, the court noted it was undisputed the bonuses had already been paid and Coleman was never worried Dyson would try to claw back or reclaim the bonus payments.  As such, there was "no reasonable possibility any law was, or would be, broken."  We cannot conclude there was a triable issue of fact as to whether Coleman engaged in protected activity under section 1102.5.

Defendant has not established the trial court erred in granting Dyson's motion for summary judgment.[3]

---

[3]  Because we have rejected the arguments made by Coleman on appeal, we need not address Dyson's alternative assertion that clear and convincing uncontroverted evidence demonstrated that it would have terminated Coleman regardless of any protected activity.

## III. DISPOSITION

The judgment is affirmed. Respondent Dyson Inc. shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

                                                   /S/
                                             RENNER, Acting P. J.

We concur:

/S/
KRAUSE, J.

/S/
FEINBERG, J.